(Decided January 5th, 1898).

---

HENRY STOCKBRIDGE, JR., AND AMOS F. MUS-SELMAN, EXECUTORS OF ISAAC ALBERTSON, GARNISHEES OF GEORGE L. HOPPER, *vs.* JAMES W. FAHNESTOCK. EDWARD M. ALLEN, TRUSTEE, CLAIMANT *vs.* JAMES W. FAHNESTOCK.

*Attachment—Affidavit by Agent—Evidence—Mortgage to Secure Payment of Larger Sum Than Due—Right of Creditors of Mortgagor to Lay Attachment—Fraudulent Conveyance.*

When the affidavit in an attachment against a non-resident is made by the agent of the plaintiff, it is not necessary that he should depose that he is such agent. It is sufficient to state that the party as agent

of the plaintiff made the affidavit; *Code,* Art. 9, sec. 7, providing that the affidavit in such cases may be made by the agent of the creditor.

When property in the possession of an executor has been mortgaged by the person entitled thereto, the question of the validity of the mortgage as against creditors of the mortgagor (a non-resident) may be raised and determined upon an attachment by a creditor laid in the hands of the executor.

If a man who is indebted to another in a certain sum executes a mortgage of property to secure the payment of a larger amount, by mistake or in consequence of the fraud of the mortgagee, such mortgage is voidable as to the excess by the then existing creditors of the mortgagor.

In such case the right of the creditors of the mortgagor to the property is not affected by the fact that the mortgagee has assigned his interest therein to a trustee for his creditors who took the same in good faith, or that the mortgagor did not actually intend to defraud his creditors.

When the question is whether a certain mortgage is valid or not as against creditors of the mortgagor, evidence that the mortgagor dismissed a bill he had filed to vacate the mortgage is not admissible.

In an attachment suit, evidence that the garnishee notified a claimant of the property of the attachment by letter within a certain time is admissible.

When the question is as to the amount of one party's indebtedness to another, an account book kept by the creditor and presented by him to the debtor, showing a smaller indebtedness than was afterwards claimed to exist, is admissible, as is also evidence of payments made by the debtor to his creditor.

Two appeals from the Court of Common Pleas (WRIGHT, J.) The affidavit referred to in the opinion of the Court set forth that " John J. Rives, agent of James W. Fahnestock of, etc., made oath," etc. At the trial the following prayers were offered, among others :

*Plaintiff's 1st Prayer.*—If the jury find that the defendant, George L. Hopper, executed the note for $1,584,70 to the plaintiff, sued on in this case, and that said George L. Hopper was a non-resident of the State of Maryland at the time this suit was brought ; and that Messrs. Stockbridge and Musselman, executors of Albertson, the garnishees in this cause, have in their hands $2,625 belonging to the share of said George L. Hopper in said Albertson's estate ;

and that said George L. Hopper is entitled to a credit of
$2,200 upon the $4,000 mortgage given by him to E. M. Al-
len, trustee, for the amount of his, said George L. Hopper's
interest in his father's estate deeded to Harrison Hopper on
December 22nd, 1886, if the jury shall so find; and that
said George L. Hopper is also entitled to credit for the pay-
ment of $1,000 represented by the Preston check offered in
evidence in this cause, and for the payment of the $1,306.65
represented by the Stockbridge check offered in evidence in
this cause, against the indebtedness due by him to Harrison
Hopper, then the plaintiff is entitled to recover against the
garnishees the amount of the note sued on, with interest
from January 1st, 1896, in their discretion.    (Granted).

*Plaintiff's 2nd Prayer.*—The jury are instructed that
George L. Hopper, the defendant, by tearing his signature
off of the deed from himself to his brother, Harrison Hop-
per, after the same had been recorded in the Circuit Court
of Harford County, did not injure or affect said deed, or the
interest of Harrison Hopper under said deed, in any manner
whatsoever.    But the jury may consider said fact in con-
nection with all the other evidence in the case as bearing on
the question of fraud.    (Granted).

*Claimant's Prayer.*—That under the pleadings and evi-
dence in this case there can be no recovery, since the mo-
tion of Edward M. Allen, trustee, for certain creditors of
Harrison Hopper, to quash the attachment in this case,
appears to the Court proper to be granted, because the
Court is satisfied from all the evidence that said Edward M.
Allen is trustee for such creditors of said Hopper, and did
not participate in nor was he cognizant of any fraud or
attempted fraud on the part of said Harrison Hopper in ob-
taining the mortgage of $4,000 from George L. Hopper to
said trustee upon the interest of the said George L. Hopper
in the estate of Isaac Albertson, deceased, or of any mistake
in the execution of the said mortgage for said amount of
$4,000 at the time of its execution, or of any fraud or
attempted fraud on the part of the said George L. Hopper

in giving said mortgage as against the plaintiff in this case or the other creditors of the said George L. Hopper. (Rejected).

*Garnishees' 5th Prayer.*—If the jury believe that George L. Hopper was, on June 6th, 1895, indebted to Harrison Hopper, and that upon an accounting between them they agreed and ascertained the amount due by said George to said Harrison as of that date to be the sum of $4,000, and that said George at the request of said Harrison executed a mortgage on that date to Edward M. Allen, trustee, for the sum of $4,000, upon his interest in the estate of Isaac Albertson, deceased, if they find he had any such interest; that then the jury should consider that the sum of $4,000 was the amount due by said George to said Harrison as of that date, and the burthen of proving that any less amount was really due on that date or at any subsequent date from said George to said Harrison is upon the plaintiff in this case, and such proof must be by a preponderance of evidence to the satisfaction of the jury; and if upon all the evidence the minds of the jury should be in a state of equipoise regarding any less amount being then due, their verdict should be for the garnishees on the second issue in this case, provided the jury find that the balance left after allowing interest on the sum of $4,000 from April 10th, 1896, to date, and crediting against said principal and interest the sum of $1,306.65 on May 8th, 1896, and allowing interest to date thereon; provided they find said sum of $1,306.65 was paid by the garnishees to said Allen, trustee, on May 8th, 1896, does not exceed the amount in the hands of the garnishees to the credit of the distributive share of George L. Hopper as one of the residuary legatees of Isaac Albertson, deceased, if they find him to be such residuary legatee. (Granted).

*Garnishees' 6th Prayer.*—If the jury find from the evidence that the plaintiff claims that an accounting was had between George L. Hopper and Harrison Hopper, on May 20th, 1895, or about that date, wherein said George was

charged as of the date of September 10th, 1890, with several items aggregating $4,104.52, and which account was closed in the mortgage of the date of May 20th, 1895, for $5,000, to Edward M. Allen, trustee, and that said accounting was erroneous in that said George should not have been charged with a note and interest amounting on September 10th, 1890, to $2,171.33, because the said note had been previously paid by said George to said Harrison, by the transfer of the former's interest in the estate of his father, John A. Hopper, to the latter, said Harrison, by deed of December 22nd, 1886, offered in evidence in this case, and that said interest in said estate was taken at a credit of $2,200 ; and shall further find that said George had been allowed for said interest in said estate on a former settlement the sum of $2,200 had between the said George and Harrison on the day said deed was made, that then there can be no recovery in this case by the plaintiff upon the second issue herein ; provided the jury further finds that said $5,000 mortgage was subsequently released upon the payment of $1,000, made by said George to said Harrison, and another mortgage was given by said George to said Allen, trustee, for $4,000, on June 6th, 1895, for the balance of said $5,000 mortgage, and both of said mortgages were upon the distributive share of said George as one of the residuary legatees of Isaac Albertson, deceased, unless the jury should further find that there is in the hands of the garnishees in this case as the executors of said deceased a sum of money to the credit of the distributive share of said George more than sufficient to pay the balance due on said mortgage for $4,000, after allowing credit for any sum the jury may find said garnishees had paid to said Allen, trustee, on account of said mortgage for $4,000, if they find any such payment to have been made by said garnishees.     (Granted).

The jury returned a verdict for the plaintiff for $1,671.82.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ. (Dec. 2, 3, 1897).

*John Prentiss Poe* and *Frederick C. Cook*, for the appellants.

*Charles W. Field*, for the appellee.

ROBERTS, J., delivered the opinion of the Court.

This controversy arises on a foreign attachment issued out of the Court of Common Pleas of Baltimore City at the instance of James W. Fahnestock, to whom George L. Hopper, by his promissory note dated Oct. 1st, 1894, was indebted in the sum of $1,584.70. The writ was laid in the hands of Henry Stockbridge, Jr., and Amos Mussel-man, executors of Isaac Albertson, deceased, as garnishees, to bind a legacy of $8,000 due the defendant in the estate of said Albertson, who was his uncle. This legacy was subject to a mortgage from the defendant to J. H. Preston of $4,000, which left in the hands of the garnishee the sum of $4,000. On this balance there was a second mortgage from the defendant to E. M. Allen, trustee, claimed to cover the whole balance due on said legacy. One phase of this controversy depends upon the validity, *vel non*, of the last-mentioned mortgage and to test its validity this attachment proceeding was instituted. We take it to be conceded that there is no controversy as to the defendant's non-residence nor as to his indebtedness to the plaintiff. On the 15th of December, 1896, the jury were sworn to try the issues joined, and on the following day Allen, trus-tee, filed his petition claiming the fund in the hands of the garnishees and made a motion to quash the writ of attach-ment, assigning reasons therefor. The verdict and judg-ment being against the defendant and the said garnishees, both claimant and garnishees have appealed. In this Court the cases were argued together; they will therefore be con-sidered and decided as but one appeal.

There are two questions presented by the record of this appeal which practically constitute the only questions which need be considered. They are briefly as follows: First, because the attachment proceedings are defective. Second, because the plaintiff has no standing in Court to impeach

the mortgage from the defendant to Allen, trustee, and if he has, the remedy of attachment is not the proper method, because a Common Law Court has no right under the cir- cumstances of this case to attach the fund in the garnishees' hands. These questions will be disposed of in the order named and first as to the defect in the attachment.

It is claimed that it does not sufficiently appear from the affidavit that John J. Rives had any authority to make it, or that he was in fact the agent of the plaintiff, and has failed to depose that he is such agent. The Code, Art. 9, sec. 4, provides that no attachment shall issue unless there be an affidavit, &c.; sec. 7, of same article, provides, "That the affidavit required by the preceding section may be made by the creditor or one of them, where there are more than one, or by the agent of the creditor or creditors, &c." The affidavit in this case is not materially variant from the terms of the statute to follow which it has generally been regarded a safe rule. "Under the Act of 1715, ch. 40, there appears to have been no restriction as to the status of plaintiffs in attachment cases, but by the Act of 1795, ch. 56, the right to proceed by attachment against the property of non-resident or absconding debtors was restricted to cit- izens of this State or of any other of the United States. This restriction continued until 1854, when by the Act of that year, chapter 153, it was put an end to." *Poe's Pl. & Pr.*, vol. 2, sec. 505. Notwithstanding no one but a " citizen of this State or of any other of the United States " could proceed by attachment against a non-resident or absconding debtor, it was only necessary to aver that he - was a citizen of this State or of the United States, and not necessary to depose or establish by proof *aliunde* that he was a citizen of this State or of the United States. *McCoy, Garnishee,* v. *Boyle,* 10 Md. 391; *Boarman* v. *Patterson and Israel, Extrs.,* 1 Gill, 372. The authorities upon this sub- ject are directly in point and remove all doubts as to the construction proper to be placed upon this affidavit. The Court, in *White* v. *Stanley,* 29 Ohio St. 423, held that if

the party who made the affidavit was described as agent of the plaintiff, he need not swear that he was the agent or attorney of the plaintiff. Nor is it necessary that he should swear that he makes the affidavit on behalf of the plaintiff. *Smith* v. *Victorin*, 54 Minn. 338; *Murray* v. *Cone*, 8 Port. (Ala.) 250; *Simpson* v. *McCarty*, 78 Cal. 175; *Baker* v. *Huddleston*, 3 Bax. (Tenn.) 1; *Eureka Steam Heating Co.* v. *Sloteman*, 67 Wis. 118. The alleged defect in the affidavit did not justify the Court below in quashing the writ, and in its refusal to do so we think there was no error.

We come now to the consideration of the second question raised by this appeal. The question here relates entirely to the character of the mortgage from the defendant to Allen, trustee, which, if valid, will absorb the entire fund. But it is claimed on the part of the plaintiff that the mortgage is purely voluntary, without consideration from the defendant or any other person, and, therefore, constructively fraudulent and void as to the plaintiff. The plaintiff contends that after paying Allen $1,300 on account of his mortgage there remained in the hands of the garnishees assets to the amount of $2,625.00. The question resolves itself into the inquiry, whether the $2,625.00 should be applied to pay off the mortgage, or whether the mortgage was voluntary, fraudulent and void as to the plaintiff, and therefore properly to be condemned to pay the plaintiff's claim. The evidence on this subject was very conflicting and unsatisfactory, depending almost exclusively upon the testimony of the defendant and of his brother, Harrison Hopper, for whose benefit said Allen was trustee. The controversy which this conflicting testimony created was matter for the jury to decide under the instructions of the Court below.

There are three exceptions to the admissibility of the proof offered; the first of which was to the refusal of the Court to admit in evidence a bill in equity filed by the defendant against Harrison Hopper and Allen attacking the validity of the mortgage to Allen on account of its volun-

tary and fraudulent character.    The Court very properly rejected this evidence.    The plaintiff was not a party to the proceeding and in no way affected by it, and further, the bill was filed after the attachment in this case had been issued.    The third exception relates solely to the question of the manner in which Allen was notified by Mr. Stockbridge, one of the garnishees, of the service upon him of the attachment.    Mr. Stockbridge testified that he notified Mr. Allen, the claimant, of the fact of the service of the writ, within sixty hours thereafter, by mail.    Allen was subsequently called to testify but did not deny having received the letter.    This testimony was properly admitted. *Roberts* v. *Woven Wire Co.*, 46 Md. 384.    The defendant was asked whether when the $4,000 mortgage was executed he owed anything to Allen, either individually or as trustee.    Witness was allowed to answer that he did not. Allen, in the further progress of the case, testified without objection that he had no pecuniary interest in the mortgage. This constitutes the third exception and there can be no doubt as to the correctness of the Court's ruling.    The fourth exception is taken to the admissibility in evidence of the account kept by Harrison Hopper against his brother George, the defendant showing George's indebtedness to him at the time of the execution of the two mortgages hereinbefore mentioned.    It was a question important to be ascertained as to what was the amount which George owed to his brother Harrison, and any statement emanating from the creditor to whom the debt was due, was clearly evidence tending to establish the amount of such indebtedness.    The fifth exception is taken to the introduction in evidence of the check of James H. Preston for $1,000, drawn payable to the defendant and by him endorsed to Harrison Hopper. The object of the proof was to show the payments which the defendant had from time to time made to Harrison Hopper, thus establishing the credits to which the defendant was entitled and demonstrating the character of the consideration of the $4,000 mortgage.    It was clearly ad-

missible.    The seventh and ninth exceptions are taken to the refusal of the Court, in the midst of the trial of the case and after the jury were empannelled, to act upon claimant's motion to quash.    It is contended by the plaintiff that under the rules of the Baltimore City Courts all motions to quash must be heard before the Judge at Large. But as the record contains no information upon the subject of the rules, we are not at liberty to consider them.    But independently of such rules, we do not perceive wherein Allen was injured by the failure of the Court to act upon the motion to quash, as the record discloses no sufficient reasons which would have justified the Court in sustaining the motion.

In support of the motion to quash, the claimant, Allen, trustee, has assigned various grounds, which for the purposes of this case can be reduced to one proposition, namely, that even though the mortgage was without consideration and fraudulent, the Court below had no jurisdiction to set it aside in an attachment proceeding.    We think this contention is without authority to sustain it.    It was very earnestly argued at the hearing in this Court and vigorously asserted that a Common Law Court had no jurisdiction to attach the fund in question here.    This Court in the case of *Williams, Garnishee,* v. *Joshua Jones,* 38 Md. 555, has held differently and we think rightly.    The case just referred to and the case under consideration here are in many respects similar.    The plaintiff had the right to resort to either one of two remedies, that of attachment or by bill in equity.    *Green* v. *Early,* 39 Md. 227 ; *Luckmeyer* v. *Seltz,* 61 Md. 324–5.

Having disposed of the exceptions to the evidence we can now examine the law of the prayers.    At the close of the plaintiff's case the garnishees offered four prayers, all of which the Court refused to grant, which constitutes their sixth bill of exceptions.    By the first of these prayers the Court was requested to instruct the jury that " because there is no evidence that J. J. Rives, the affiant in the at-

tachment proceeding, had authority to make the affidavit or was in fact the agent of the plaintiff at the time of making the affidavit, &c." We have already discussed this proposition and no further reference to it is necessary. The second and fourth prayers are equally erroneous, in that they ignore all of the proof offered by the plaintiff tending to show the voluntary and fraudulent character of the mortgage. The third prayer asks the Court to instruct the jury upon absolutely untenable grounds, because even if it be true that Allen, trustee, had no knowledge of the state of accounts between the defendant and Harrison Hopper at the time of the execution of the $4,000 mortgage and did not participate in any fraud connected with the mortgage, yet if Harrison Hopper, for whose benefit Allen was trustee, did participate in or perpetrated the fraud, they were not entitled to the instructions asked for. Allen had, as heretofore mentioned, no interest in the mortgage and has entered a disclaimer to that effect, and if Harrison Hopper was a party to the fraud, it made no difference whether Allen, who was merely his agent, was or was not.

At the close of the case the plaintiff offered two prayers, which the Court granted; the claimant offered one prayer which was rejected, and the garnishees offered six prayers, all of which were rejected, with the exception of the fifth and sixth, which were granted by the Court. The plaintiff's first prayer presents a proposition which correctly states the plaintiff's case and is entirely free from just criticism and was properly granted. The authorities which sustain it are numerous and uniform. *Goodman* v. *Wineland*, 61 Md. 449; *Ellinger* v. *Crowl*, 17 Md. 375; *Williams* v. *Banks*, 11 Md. 226-7; *Baxter* v. *Sewell*, 3 Md. 334; *Christopher* v. *Christopher*, 64 Md. 588; *Worthington* v. *Bullett*, 6 Md, 198. The plaintiff's second prayer requires no comment and was not pressed at the argument. The claimant's prayer is a mere repetition of his motion to quash and has already been considered and disposed of. We have carefully examined the garnishees' prayers and think

by the granting of their fifth and sixth prayers, the Court below has given them all the law to which they were justly entitled. Taking the plaintiff's first prayer in conjunction with the garnishees' fifth and sixth prayers, the jury were fully and fairly instructed on the law of the case and no injury resulted to the garnishees in consequence of the Court's refusal to grant their other instructions. Finding no error in the ruling of the lower Court and for the reasons assigned herein we affirm the judgment.

*Judgment affirmed with costs.*

(Decided January 5th, 1898).