975 A.2d 264

**T.W. HERRING INVESTMENTS, LLC**

**v.**

**ATLANTIC BUILDERS GROUP, INC.**

**No. 440, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

July 7, 2009.

674

James E. Edwards, Jr. (Jeffrey A. Regner, Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, for appellant.

David D. Gilliss (Eric G. Korphage, Niles Barton & Wilmer, LLP, on the brief), Baltimore, for appellee.

Panel: JAMES R. EYLER, WRIGHT and J. FREDERICK SHARER (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

T.W. Herring Investments, LLC, appellant, appeals from an order entered by the Circuit Court for Howard County, which established a mechanic's lien in favor of Atlantic Builders Group, Inc., appellee, against property owned by appellant. The questions that we shall address on this appeal, in inverse order, are (1) whether appellee's petition to establish a lien was properly verified, and (2) whether appellant's response to appellee's petition was properly verified. We answer both questions in the affirmative, and thus, vacate the order, and remand for further proceedings consistent with this opinion.

## Factual Background

On February 6, 2008, appellee filed a complaint and petition to establish a mechanic's lien against property located in Clarksville, Maryland and owned by appellant. In the complaint and petition, appellee alleged the following.

Appellee furnished labor and materials necessary to perform general contracting work related to the construction of a Walgreens store on appellant's property. Appellee furnished the labor and materials pursuant to a contract dated March 12, 2007 between it and Auto Drive Retail Investors, LLC

("Auto Drive"), the then owner of the property. Appellee claimed that $179,897 was due and payable. In count 1 of the complaint and petition, appellee requested an order establishing a mechanic's lien, and in counts II and III, respectively, appellee requested a judgment against appellant based on unjust enrichment and quantum meruit.[1]

Appellee's complaint and petition were supported by exhibits, including a copy of a deed dated June 27, 2007, from Auto Drive to appellant, conveying the property in question, and an affidavit by a representative of appellee attesting to the truthfulness of the allegations in the complaint and petition.

On February 13, 2008, the circuit court executed a show cause order, requiring appellant "to show cause by filing a Counter–Affidavit or Verified Answer on or before the 17th day of March, 2008, why a lien for the amount claimed should not attach upon the land described in the Petition. . . ." The show cause order also scheduled a hearing on March 27, 2008, and advised appellant that it had the right to appear and present evidence at the hearing, and that if it failed to file a timely affidavit or verified answer, the facts contained in the complaint and petition would be deemed admitted, and the hearing waived.

On March 17, 2008, appellant filed an answer in which it raised, *inter alia,* the defense that it was a bona fide purchaser of the property which acquired the property before the complaint and petition was filed. The answer was verified by a person named Mark Ball. Mr. Ball's relationship to appellant was not described in the answer or affidavit. Appellant also filed a motion to dismiss the claim for a mechanic's lien, with supporting memorandum, on the ground that appellant was a bona fide purchaser, and thus, the property was not subject to a lien.

---

1. Appellee also sued Auto Drive for breach of contract and for violation of Maryland's Construction Contract Prompt Payment Act, Maryland Code (2003 Repl. Vol.), § 9–301, *et. seq.* of the Real Property Article ("R.P.").

On March 26, 2008, appellee filed a response to appellant's motion to dismiss. In the response, appellee asserted that appellant was not a bona fide purchaser because it had actual knowledge of appellee's claims prior to appellant's purchase of the property and imputed knowledge because Auto Drive acted as appellant's agent. With respect to agency, appellee included as one of its supporting allegations the fact that Mark Ball, who it knew to be a principal in Auto Drive, acted as appellant's agent in verifying appellant's answer to the complaint and petition.

Also on March 26, 2008, appellee filed an amended complaint and petition to establish a mechanic's lien. Appellee included the allegations that it had recited in its response to appellant's motion to dismiss, supporting its position that appellant had notice of appellee's claims prior to its purchase and Mark Ball "at the very least served as agent of T.W. Herring." Again, in support of its argument as to agency, appellee observed that Mark Ball signed appellant's verified answer. A representative of appellee verified the amended complaint and petition. The affidavit recited that the contents of the amended complaint and petition were true, based upon the affiant's personal knowledge.

As a result of the filing of the amended complaint and petition, the court canceled the hearing scheduled for March 27 and reset it for April 23, 2008. The notice from the clerk's office indicated that the hearing was to address the motion to dismiss and also constitute a "show cause hearing."

On April 10, 2008, the affiant, who had verified appellee's amended complaint and petition based on personal knowledge, filed another affidavit in which he stated that the information relating to appellee's assertion that appellant was not a bona fide purchaser was based on the affiant's information and belief.

On April 10, 2008, appellant filed a verified answer to the amended complaint and petition, in which it denied many of the allegations, including that Mark Ball had served as its

agent but admitted that Mr. Ball had verified its responsive pleadings.

At the hearing on April 23, the parties appeared with witnesses, ready to proceed on the merits. The court expressed the view that the matter was scheduled only for a motions hearing. During a colloquy with the court as to the nature of the proceedings, appellee asserted that Mark Ball was not authorized to verify the answers filed on behalf of appellant because he was not a manager of appellant, an LLC. Thus, according to appellee, the answers were of no effect and the allegations in the amended complaint and petition were deemed to be admitted. The court agreed with appellee and entered a final order establishing a mechanic's lien and directing the sale of the property. Appellant appeals from that order.[2]

## Discussion

Appellant contends that the court erred in entering a final mechanic's lien because (1) its verified answers were valid and effective, and (2) regardless, the amended complaint and petition were legally insufficient to satisfy appellee's burden of showing appellant was not a bona fide purchaser because the pertinent allegations were based on information and belief, not personal knowledge.

Appellee contends (1) appellant's answers were not verified properly because Mark Ball, a principal of Auto Drive, had no relationship with or authority to bind appellant; (2) appellant waived its right to challenge the legal sufficiency of appellee's affidavit, and; (3) appellee's amended complaint and petition was legally sufficient and alleged that appellant "had knowledge of [appellee's] claims prior to the sale, [appellant] was in the construction contract chain and the property's sale was not an arms-length transaction."

---

2. The order did not constitute a final judgment because there were other open claims. Nevertheless, the order is appealable pursuant to Maryland Code (2006 Repl. Vol.), § 12–303(3)(v) of the Courts & Judicial Proceedings Article ("C.J.") (an order for the sale of property or the payment of money is an appealable interlocutory order).

We agree with appellant that both of its verified answers, although only the answer to the amended complaint and petition is operative, were valid and sufficient to require an evidentiary hearing pursuant to the show cause order. We also agree with appellee, assuming that the question is properly before us, that its amended complaint and petition was properly verified. We express no opinion as to the legal sufficiency of the amended complaint and petition other than the form of the affidavit.

### Legal sufficiency of answer

Generally, a pleading signed by an attorney representing a party is a valid pleading. Maryland Rule 1–311. Appellant's answers were signed by counsel. A pleading need not be under affidavit unless required by an applicable rule or statute. Maryland Rule 1–301(f). An affidavit "means a written statement the contents of which are affirmed under the penalties of perjury to be true." Maryland Rule 1–202(b). "Unless the applicable rule expressly requires the affidavit to be made on personal knowledge, the statement may be made to the best of the affiant's knowledge, information, and belief." *Id.* Maryland Rule 1–304 provides:

> The statement of the affiant may be made before an officer authorized to administer an oath or affirmation, who shall certify in writing to having administered the oath or taken the affirmation, or may be made by signing the statement in one of the following forms:

> Generally, 'I solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.'

> Personal Knowledge, 'I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true.'

■ Absent a specific requirement by rule or statute, anyone with knowledge of facts and who is competent to testify may make an affidavit. Am Jur 2nd Affidavits § 3. An affidavit by a corporation may be made by any agent author-

ized to make the affidavit and who has knowledge of the facts. *Id.* at § 5. Unless required by rule or statute, an affiant need not recite any facts demonstrating the affiant's authority to execute the affidavit and need not verify such facts or the authority to sign. *See Power v. Allied Asphalt Products Corp.,* 162 Md. 175, 184–85, 159 A. 251 (1932) and *Deved v. Carrington,* 98 Md. 376, 379–80, 56 A. 818 (1904).

In Maryland, a petition to establish a mechanic's lien shall contain, *inter alia,* an affidavit "by the petitioner or some person on his behalf, setting forth facts upon which the petitioner claims he is entitled to the lien in the amount specified." R.P. § 9–105(a)(2). If the owner desires to controvert the facts contained in the petitioner's affidavit, the owner must "file an affidavit in support of his answer showing cause." R.P. § 9–106(a)(2). The answer could be filed as one document, signed by counsel, and the affidavit, which is in support of the answer, could be filed as a separate document. The purpose of the affidavit is to provide evidentiary support for the answer. The failure to file such an affidavit "shall constitute an admission for the purposes of the proceedings of all statements of fact in the affidavit supporting the petitioner's claim, but shall not constitute an admission that such petition or affidavit in support thereof is legally sufficient." *Id.*

Maryland Rule 12–202 parallels R.P. § 9–105 and provides that an action to establish a mechanic's lien shall be commenced by filing a verified complaint. The rule provides that the complaint "shall be under oath by the plaintiff or a person making oath on the plaintiff's behalf." Maryland Rule 12–302(b). Maryland Rule 12–304 parallels R.P. § 9–106 and, consistent with Maryland Rule 12–302(b), requires that the answer be "under oath."

■ There is no requirement in the above statutes or rules relating to the legal sufficiency of the affidavit other than that the affiant have the required knowledge. Thus, there is no Maryland statute or rule that prohibits a party from extending authority to a person with knowledge for the limited purpose

of executing an affidavit on the party's behalf. In this case, the actual authority for that limited purpose was not contested by appellant; it was admitted.[3] In addition, there is no requirement in the above statutes or rules that the affidavit recite that the affiant is authorized to make the affidavit, or the facts demonstrating that authorization.

■ Appellee, observing that appellant is a limited liability company organized under the laws of North Carolina, argues that N.C. Gen.Stat. § 57C–3–25(c) requires that a "manager" must sign an affidavit on behalf of appellant. That section provides:

§ 57C–3–25. Identity of managers, authentication or records, and execution of documents.

(a) Any person dealing with a limited liability company or a foreign limited liability company may rely conclusively upon its most recent annual report and any amendments to it on file with the Secretary of State as to the identity of its managers, except to the extent the person has actual knowledge that a person identified therein as a manager is not a manager.

(b) The documents, if any constituting the operating agreement of a limited liability company or a foreign limited liability company authorized to transact business in this State, and records of the actions of its members, managers, directors, or executives may be authenticated by any manager of the domestic or foreign limited liability company. Any person dealing with the domestic or foreign limited liability company may rely conclusively upon the certificate or written statement of a manager authenticating the documents and records except to the extent the person has actual knowledge that the certificate or written statement is false.

(c) Any document or instrument required or permitted by law to be filed, registered, or recorded with any public

---

**3.** Appellant did deny that Mark Ball was its agent during the time of the events that are relevant to the issue of bona fide purchaser.

authority and to be executed by a limited liability company or a foreign limited liability company authorized to transact business in this State shall be sufficiently executed for such purpose if signed on its behalf by one of its managers.

The statute upon which appellee relies, N.C. Gen.Stat. § 57C–3–25(c), is similar to many statutes that provide for the duties and powers of persons holding certain positions to bind their business entity. The purpose of such statutes is to provide assurance to persons doing business with those entities that acts performed by certain persons were performed with actual authority. Were it otherwise, outsiders might reasonably require proof of authorization in every transaction, creating unnecessary impediments to the flow of business. We find nothing in the North Carolina statutes that prohibit appellant, acting through a manager, from authorizing Mark Ball to file an affidavit on its behalf.

The articles of organization for appellant, dated March 8, 2007, indicate that appellant is "manager-managed," meaning that members are not managers merely by virtue of their status as members but must be designated as managers. The articles of organization do not identify the manager(s). In that event, there must be a written operating agreement, pursuant to N.C. Gen.Stat., § 57C–3–20, in which the manager(s) is identified. An operating agreement is an oral or written agreement of the members with respect to the affairs of the limited liability company and the conduct of its business that is binding on the limited liability company's members. N.C. Gen.Stat. § 57C–1–03(16). An operating agreement may exist.

Section 57C–10–03(c) of the law governing limited liability companies expressly states that the "law of agency shall apply under this Chapter," "this chapter" meaning 57C, which contains the statutes governing limited liability companies. Certain aspects of agency are expressly dealt with in the statutes, including apparent agency. Section 57C–3–23 provides that all acts by a manager,

for apparently carrying on in the usual way the business for the limited liability company of which he is a manager, binds the limited liability company, unless the manager so acting has in fact no authority to act for the limited liability company in the particular matter and the person with whom the manager is dealing has knowledge of the fact that the manager has no authority. An act of a manager that is not apparently for carrying on the usual course of the business of the limited liability company does not bind the limited liability company unless authorized in fact or ratified by the limited liability company.

In addition, § 57C–3–24(a) provides that a manager of a limited liability company may delegate authority to persons other than managers to act on behalf of the limited liability company, pursuant to a written agreement. The delegation is without limitation, including authority to conduct the business of the company. *Id.* The act of any person within the scope of the authority delegated is as effective to bind the limited liability company as would the act by a manager, unless the delegation was revoked and the person with whom the such person was dealing had actual knowledge of the fact of revocation. *Id.*

The above statutes are geared toward the conduct of day to day business. Because the purpose of the affidavit in this instance was to recite facts of which the affiant had personal knowledge, not to conduct business on behalf of the company or to file an answer on its behalf, and the company appeared through counsel for all purposes other than to attest to the truthfulness of facts, it is doubtful whether written authorization under § 57C–3–24(a) is required. Assuming, however, that the statute requires written authorization for the affidavit filed in this case, there is no requirement that the existence of the authorization be recited in the affidavit. A written authorization may in fact exist.

*Legal sufficiency of amended complaint and petition*

As noted above, the relevant Maryland statutes require that the petitioner and the owner file their respective pleadings

under "affidavit." The relevant Maryland Rules require that the pleadings be under "oath." An oath may be oral or in writing. Maryland Rule 1–303. A written oath "shall be in a form provided in Rule 1–304." *Id.* The word "oath" frequently is used to refer to the declaration itself, by swearing or affirmation; and the word "affidavit" means a written statement, the contents of which are under oath, *i.e.*, a written oath. As indicated above, Maryland Rule 1–304 sets forth two forms of oath/affidavit. Neither the mechanic's lien statutes nor the applicable rules expressly state the form of the affidavit required. It follows, therefore, that either form suffices.

For the above reasons, we vacate the final order establishing a mechanic's lien and remand the case to circuit court to hold a show cause hearing.

**FINAL ORDER ESTABLISHING MECHANIC'S LIEN AND DIRECTING SALE OF PROPERTY DATED APRIL 23, 2008 VACATED. CASE REMANDED TO CIRCUIT COURT FOR HOWARD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**